UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SANDRA ANN HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-458-OLG (HJB) |
| | § | |
| FRANK BISIGNANO, Commissioner | § | |
| of the Social Security Administration,[1] | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Orlando L. Garcia, United States District Judge:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial by the Commissioner of the Social Security Administration (the "Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively, pursuant to 42 U.S.C. § 405(g). This matter was automatically referred to the undersigned for findings and recommendations pursuant to an October 8, 2019, Division-wide Standing Order.[2] (*See* Text Entry Dated May 6, 2024.)

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025. *See* https://blog.ssa.gov/financial-services-industry-leader-frank-bisignano-to-be-the-18th-commissioner-of-social-security/ (last visited July 11, 2025). Commissioner Bisignano is substituted for former Acting Commissioner Martin O'Malley as the Defendant in this case. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer . . . ceases to hold office while the action is pending[;] [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name.").

[2] The Standing Order is available at the following link: https://perma.cc/2B8U-5P2E.

After considering the parties' briefs (Docket Entries 10, 13, and 15), the transcript ("Tr.") of the proceedings below (Docket Entry 6), the applicable case law, the relevant statutory and regulatory provisions, and the entire record in this matter, I recommend that the Commissioner's decision be **AFFIRMED**.

## I.    Jurisdiction.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(c).

## II.    Background.

Plaintiff filed an application for DIB and SSI on March 11, 2021, alleging an onset of her disability on November 28, 2020.  (*See* Tr. 14.)  She later amended the alleged onset date to December 3, 2020.  (*Id.*)  On that date, Plaintiff was 48 years old with a high school education and one year of college.  (Tr. 24, 279, 306.)

After the Commissioner denied her initial claim and her request for reconsideration, Plaintiff filed a written request for a hearing, which was held before Administrative Law Judge ("ALJ") Matthew Allen on August 28, 2023. (Tr. 32–58.) On November 1, 2023,  the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 14–26.)  In his decision, the ALJ followed the five-step sequential evaluation process required under 20 C.F.R. §§ 404.1520(a) and 416.920(a). (Tr. 15–16.)

At step one of the evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 3, 2020.  (Tr. 16.)  At step two, the ALJ found that Plaintiff had the following severe impairments: polyarticular osteoarthrosis; carpal tunnel syndrome; status post gunshot wound; obesity; bipolar disorder;

anxiety disorder; and post-traumatic stress disorder ("PTSD"). (*Id.*) At step three, the ALJ found that Plaintiff had no "impairment or combination of impairments that meets or medically equals the severity of one of the impairments" listed in 20 C.F.R. § 404, Subpart P, App. 1 ("the Listings"). (Tr. 17.)

Before reaching step four in the analysis, the ALJ found that Plaintiff retained the residual functioning capacity ("RFC") to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with an additional physical limitation that she can only "occasionally handle and finger with the right, non-dominant upper extremity." (Tr. 19.) The ALJ also identified mental RFC limitations: (1) "[s]he can understand, remember, and carry out detailed, but not complex, instructions"; (2) "[s]he can use judgment to make detailed, but not complex, work-related decisions"; and (3) "[s]he can have frequent," rather than unlimited, "interaction with supervisors, coworkers, and the public." (*Id.*)

At step four, based on his RFC findings and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 24.) At step five, the ALJ found, based on Plaintiff's RFC, that jobs existed in significant numbers in the national economy that Plaintiff could perform, including Furniture rental clerk, DOT 295.357-018, classified as light unskilled (SVP-2) work, of which there are approximately 2,700 positions in the national economy; and Investigator, DOT 241.367-038, classified as light unskilled (SVP-2) work, of which there are approximately 8,800 positions in the national economy. (Tr. 25.) Based on those findings, the ALJ concluded that Plaintiff was not disabled. (Tr. 25–26.)

Plaintiff sought review by the Appeals Council, which denied the request, finding "no reason under [its] rules to review the Administrative Law Judge's decision." (Tr. 1.) The Appeals

Council's denial made the ALJ's decision the final decision of the Commissioner.  (*See* Tr. 1–3.)
The instant appeal followed.  (Docket Entry 1.)

## III.    Applicable Legal Standards.

### A.    *Standard of Review.*

In its review, the Court is limited to a determination of whether the Commissioner's
decision is supported by substantial evidence and whether the proper legal standard was applied.
42 U.S.C. § 405(g); *see Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  "Substantial evidence is
more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th
Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court weighs four
elements of proof in determining whether substantial evidence supports the Commissioner's
determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating
physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's
age, education, and work experience. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).
Substantial evidence will be found lacking only when "there is a conspicuous absence of credible
choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)
(citation omitted).  The court may not substitute its judgment for that of the Commissioner. *Newton
v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments
are for the Commissioner, not the Court, to resolve. *Martinez*, 64 F.3d at 174.

While substantial deference is afforded the Commissioner's factual findings, the ALJ's
legal conclusions, and claims of procedural error, are reviewed *de novo*. *Brueggemann v.
Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Gutierrez v. Barnhart*, No. 04–11025, 2005 WL
1994289, at *4 (5th Cir. Aug. 19, 2005) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1382–83 (5th Cir.

1988)).  Even when an ALJ errs, the Court must further determine whether the error was harmless.

Error will not warrant reversal unless a party's substantial rights have been affected, *Audler v.*

*Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007), and procedural errors "constitute a basis for remand

only if such improprieties would cast into doubt the existence of substantial evidence to support

the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (quoting *Morris*

*v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

> ### B.    *Entitlement to Disability Benefits.*

The term "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment or combination of

impairments which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than [12] months."  42 U.S.C. § 423(d)(1)(A).  A claimant

is disabled only if her physical or mental impairment or impairments are so severe that she is

unable to do her previous work, and cannot, considering her age, education, and work experience,

participate in any other kind of substantial gainful work which exists in the national economy,

regardless of whether such work is available in the immediate area where she lives, whether a

specific job vacancy actually exists, or whether she would be hired if she applied for such work.

*Id*. § 423(d)(2)(A).

> ### C.    *Evaluation Process and Burden of Proof.*

SSA regulations require that disability claims be evaluated according to a five-step process.

*See* 20 C.F.R. §§ 404.1520, 416.920 (2012).  At the first step, the Commissioner determines

whether the claimant is currently engaged in substantial gainful activity.  *Id*. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If so, then she is not disabled regardless of her medical conditions, age,

education, or work experience.  *Id*. §§ 494.1520(b), 416.920(b).  At the second step, the

Commissioner determines whether the claimant's impairment is severe. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Absent a severe impairment, a claimant is not disabled. *Id*. §§ 404.1520(c), 416.920(c).  At the third step, the Commissioner compares the severe impairment with those in the Listings. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see* 20 C.F.R. § 404 Subpart P, App'x 1. If the severe impairment meets or equals an impairment in the Listings, then the claimant is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the severe impairment is not in the Listings, then the Commissioner must proceed to the fourth step: determining the claimant's RFC and reviewing the demands of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is still able to perform her past work, then she is not disabled. *Id.* §§ 404.1520(f), 416.920(f).  But if the claimant is unable to do so, then the Commissioner must proceed to the fifth and final step: evaluating the claimant's ability—given her residual capacities, age, education, and work experience—to do other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Only if she cannot perform any other work will the claimant be deemed disabled. *Id.*, §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof during the first four steps of this process. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  But once the claimant has shown that she is unable to perform her past work, the burden shifts to the Commissioner to identify other substantial gainful employment available to the claimant that she is physically able to perform—and to maintain for a significant period of time—taking into account her exertional and non-exertional limitations. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).  If the Commissioner identifies such work, then the burden shifts back to the claimant to prove that she is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989).  A finding that a claimant is

not disabled at any step in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV.    Analysis.

Plaintiff argues in her brief that remand is required for two reasons; (a) the ALJ's RFC determination was inconsistent with his finding that Plaintiff had severe mental impairment(s); and (b) the ALJ failed to evaluate the medical opinion evidence as required by SSA regulations. (Docket Entry 10, at 3–16.)  Each argument is considered below.

### A. *Whether Remand Is Required Because the ALJ's RFC Determination Was Inconsistent with His Finding of a Severe Mental Impairment.*

As noted above, the ALJ found that Plaintiff had the severe mental impairments of bipolar disorder, anxiety disorder, and PTSD. (Tr. 16.)  In determining whether these severe impairments required a finding of disability under the Listings in 20 C.F.R. § 404 Subpart P, App'x 1, the ALJ evaluated the four broad areas of mental functioning set out in the psychiatric review technique for assessing mental disorders, also known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)–(4), 12.04(B)(1)–(4), 12.06(B)(1)–(4); *see also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (2017);  *See* Soc. Sec. Regul. ("SSR") 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  For each area, the ALJ was required to rate the degree of limitation using a five-point scale: none, mild, moderate, marked, and extreme.  *Id.*, §§ 404.1520a(c)(4), 416920a(c)(4). A finding of an "extreme" limitation in any one area, or a "marked" limitation in any two or more areas, meets the paragraph B criteria and requires a finding of disability.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(F)(2).

The ALJ found that Plaintiff had moderate limitations in the three functional areas of understanding, remembering, and applying information; interacting with others; and concentrating, persisting, and maintaining pace.  (Tr. 18.)  He also found that she had a mild limitation in the functional area of adapting or managing herself.  (*Id.*)  In making these determinations, the ALJ considered the record evidence, and he rejected the finding of a lesser limitation initially made by the Commissioner.  Instead, he found the limitations determined by the Commissioner on reconsideration were persuasive and consistent with the record.  (Tr. 18.)

Plaintiff does not take issue with the above findings, made at steps two and three of the five-step sequential analysis.  Instead, she argues that these findings were inconsistent with the RFC arrived at by the ALJ, and that this inconsistency rendered his conclusions at steps four and five invalid.  (Docket Entry 10, at 6.)  Plaintiff argues that the ALJ's RFC finding contained no limitations on the claimant's ability to perform basic work activities.  She acknowledges that the mental portion of the RFC limited her to understanding, remembering, and carrying out "detailed, but not complex" instructions and using judgment to make "detailed, but not complex" work-related decision (*Id.* citing Tr. 19)).  But Plaintiff argues that the severe mental impairments from which she suffers would limit her ability to perform even simple work, and the ALJ made no accommodation in this regard in formulating the RFC.  (Docket Entry 10, at 6–7.)  In support of this argument, Plaintiff cites the regulations regarding non-severe impairments which suggest, by implication, that if a mental impairment is severe, it significantly limits mental ability to do "basic work activities," which are defined to include "[u]nderstanding, carrying out, and remembering simple instructions" and the use of judgment.  (Docket Entry 10, at 6 (citing 20 C.F.R. §§ 404.1522(b)(3) and 416.922(b)(3) (2017).)

Similar arguments have repeatedly been rejected by courts in the Fifth Circuit, most recently by a magistrate judge in the Northern District of Texas in *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-BP, 2025 WL 1268116 (N.D. Tex. May 1, 2025). As in this case, the ALJ in *Roberts* included in the RFC a mental limitation restricting the plaintiff to understanding, remembering, and carrying out "detailed, but not complex, tasks and instructions." *Id.* at *3. As here, plaintiff likewise argued that the ALJ's finding of "[t]he presence of a severe mental impairment means that as a matter of law the claimant's ability to perform basic work activities is significantly limited," and therefore that the ALJ's RFC determination contradicted that finding because it "contain[ed] no limitations whatsoever on [the plaintiff's] ability to perform the basic work activity of understanding, carrying out and remembering simple instructions." *Id.* at *3.[3]

The court rejected this argument. As it explained, the paragraph B findings at step 3 and do not directly correlate to the RFC. 2025 WL 1268116, at *3. Contrary to the plaintiff's argument, the court was presented with "no authority that a finding of a severe limitation at step two must correspond to an RFC finding that specifically limits 'understanding, carrying out, and remembering simple instruction'" under 20 C.F.R. § 404.1522. *Id.* at *4. To the contrary, the court held that the SSA regulations "do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." *Id.* (quoting *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009)).

---

[3] The plaintiff in *Roberts* was represented by the same counsel who represents Plaintiff in this case. 2025 WL 1268116, at *1; *see also Suzan R. v. O'Malley*, No. EP-23-CV-00288-KC-RFC, 2024 WL 3169606 (W.D. Tex. June 20, 2024) (rejecting similar argument presented by same counsel).

The reasoning in *Roberts* is persuasive.  As in that case, the ALJ found moderate deficits in concentration, persistence, and pace, and incorporated that finding into the RFC by limiting Plaintiff to "detailed but not complex job tasks."  (Tr. 24.)  As the *Roberts* court noted, "[s]imilar findings have been upheld in numerous other courts."  2025 WL 1268116, at *5 (collecting cases). Accordingly, Plaintiff is mistaken in arguing that the ALJ's findings are necessarily inconsistent and require remand.  (*See* Docket Entry 10, at 7.)

The ALJ's mental RFC limitations are supported by substantial evidence.  In his decision, the ALJ considered Plaintiff's self-reported limitations and her testimony, numerous treatment records, administrative findings at an initial and a reconsideration level, and two consultative psychological examinations.  (Tr. 21–23.)  The ALJ evaluated this evidence carefully, rejecting administrative findings and medical opinions he found either inconsistent with, or unsupported by, the record.  (*Id.*)  At the conclusion of his evaluation, the ALJ found that, because of Plaintiff's anxiety, bipolar disorder, and PTSD, "she can understand, remember, and carry out detailed, but not complex, instructions, and use judgment to make detailed, but not complex, work-related decisions."  (Tr. 23.)  Additionally, "[b]ecause of reported increases in irritability, difficulty managing anger, and general anxiety and desire to avoid others, she is limited to only frequent interaction with supervisors, coworkers, and the public."  (*Id.*)  In making these findings, the ALJ complied with the requirement that the mental RFC assessment include more detail than the paragraph B assessment at steps two and three.  Indeed, the ALJ expressly cited those more detailed RFC requirements.  (*See* Tr. 18 (citing SSR 96-8p).)  Under the circumstances, Plaintiff has failed to show an erroneous inconsistency in the ALJ's determinations, let alone one requiring remand.

**B.  *Whether the ALJ Failed to Properly Evaluate Medical Opinion Evidence.***

Plaintiff next challenges the ALJ's evaluation of the medical opinions of Agency consultative examiners Javier Villanueva, Ph.D., and Rihard Hardaway, Ph.D., arguing that remand is required because the ALJ failed to adequately explain his findings with respect to their opinions.  (Docket Entry 10, at 7–15.)  Plaintiff cites 20 C.F.R. §§ 404.1520c, and 416.920c (2017), which set out the Commissioner's policy for articulating how medical opinions and prior administrative medical findings are considered.  The regulations require that any determination articulate the persuasiveness of each opinion and prior administrative finding, considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Of these factors, the factors of supportability and consistency are the most important.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The "supportability" factor looks to how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The "consistency" factors examines how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In considering Plaintiff's claims as to the adequacy of the ALJ's explanations, it is useful to consider in some detail the opinion evidence that he was called upon to evaluate.  In this case, there were two medical opinions and two administrative findings that the ALJ evaluated in conjunction with Plaintiff's mental impairments and RFC.  The first opinion came from Dr. Javier Villanueva, Ph.D, a licensed psychologist who performed a consultative examination of Plaintiff on December 14, 2021.  (Tr. 1000–04.)  Dr. Villanueva found that Plaintiff suffered from several

11

mental conditions such that, although "generally able to reason," she was "struggling to make occupational, personal, and social adjustments." (Tr. 1003.) However, Dr. Villanueva observed "no significant deficits in memory or concentration" during his evaluation, and found Plaintiff "capable of managing benefit payments independently" and able "to understand the meaning of filing for benefits." (*Id.*)

Soon after Dr. Villanueva's examination, administrative findings were made by the Commissioner as part of the initial denial of disability. (Tr. 106–16.) In those findings, the agency applied the paragraph B criteria for assessing mental impairment, finding that Plaintiff had mild limitations in understanding, remembering, or applying information, and adapting or managing herself, but moderate limitations interacting with others and concentrating, persisting, and maintaining pace. (Tr. 109.) In making these findings, the Agency specifically considered Dr. Villanueva's findings. (Tr. 108–110.)

The next consultative examination was performed on September 28, 2022, by licensed psychologist Richard Hardaway, Ph.D. (Tr. 1162–66.) Like Dr. Villanueva, Dr. Hardaway concluded that Plaintiff would be able to manage benefit payments in her own best interest, and appeared to understand the meaning of filing for benefits. (Tr. 1166.) But he found that Plaintiff was "unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to chronic major depression and PTSD," and also found it "unlikely that she could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." (*Id.*)

After Dr. Hardaway's evaluation, the Commissioner made administrative disability findings at the reconsideration level on November 12, 2022. (Tr. 119–31.) These findings were made by psychologist Matthew Wong, Ph.D. (*See* Tr. 129.) Dr. Wong considered both Dr.

Villanueva's and Dr. Hardaway's evaluations.  (Tr. 123–24.)  Applying the "Paragraph B" criteria, Dr. Wong found moderate limitations in all four areas of mental functioning.  (Tr. 123.)

The ALJ considered the opinion evidence detailed above both in assessing the severity of Plaintiff's mental impairments at step three of the five-step evaluation process and in determining her RFC.  (Tr. 18–23.)  At step three, he considered the Paragraph B criteria and found the initial administrative finding of only mild limitations in two areas was not persuasive, but instead that he reconsideration-level findings of moderate impairment across the board was both persuasive and consistent with the record.  (Tr. 18.)

As discussed above, the ALJ made clear that the Paragraph B analysis at steps two and three were not themselves an RFC determination, as that determination "requires a more detailed assessment," itemizing each of the various functions contained within "the broad categories found in paragraph B."  (Tr. 18.)  When he turned to the RFC assessment, the ALJ again found the Commissioner's initial finding unpersuasive, as it was "unclear in its reasoning," used "poorly defined" limitations, and was internally inconsistent as it suggested limitations on contact with the public and coworkers but "no limitations in her interactions with supervisors."  (Tr. 22.)  With regard to the Commissioner's finding on reconsideration, the ALJ found the opinion to be "generally well supported," specifically noting that the finding cited evidence including the examinations of Drs. Villanueva and Hardaway.  (*Id.* (citing Tr. 122).)  But because this finding also used "language that is not clearly defined," the ALJ also found it to be unpersuasive.  (Tr. 22.)

Turning to the consultative examinations, the ALJ found persuasive Dr. Villanueva's opinion (shared by Dr. Hardaway) that Plaintiff could understand the meaning of filing for benefits and would be able to manage benefit payments independently, as this opinion was "consistent with her reported ability to manage finances independently and with the findings that she has generally

logical thought processes and coherent thought content, but ha[s] mildly limited memory, and relatively normal concentration." (Tr. 23; *see* Tr. 1003, 1166.) However, the ALJ found the remainder of the medical opinions unpersuasive. Although they were "somewhat consistent with the record, which shows reported irritability and difficulty with concentration, attention, and memory that are likely to cause distractions and reduce her ability to manage mental demands," the limitations found by the examiner were "not specifically functional," but were instead "vague assessments of her general capacity. (Tr. 23 (citing medical treatment records).) "[A]s such, [they] have limited use in determining the claimant's capacity for work." (Tr. 23.)

Plaintiff argues that the ALJ failed to explain his rejection of some or all of the consulting examiner's opinions in determining the RFC. (Docket Entry 10, at 9–10.) Plaintiff suggests that the ALJ found the opinions to be "partially or somewhat persuasive," but argues that he was not clear as to which portions of the opinions he found unpersuasive. (*Id.* at 8.) Contrary to this argument, the ALJ made clear that he found the opinions as to Plaintiff's managing her own claims process to be persuasive, but that he found the "other portions of the opinions are not persuasive." (Tr. 23.) Read as a whole, the ALJ's findings considered the consistency of all the opinions and administrative findings, and whether they were supported by medical records. Ultimately, he found all of them to lack persuasive authority because they used vague or poorly defined standards. (Tr. 22–23.) Thus, the ALJ did not fail to explain his reasons for rejecting the medical opinions in this case.

Plaintiff disputes the ALJ's assessment of the vagueness of the opinion evidence (Docket Entry 10, at 11); that dispute, however, is immaterial to whether the ALJ failed to explain himself, but instead bears on whether the ALJ's decision was supported by substantial evidence. Plaintiff also suggests that the ALJ substituted his own lay opinion for the medical opinions of the

14

examiners.  (*Id.* at 12.)   Contrary to this argument, the ALJ based his RFC determination on Plaintiff's testimony and prior statements, and on medical treatment records from July 2021 to September 2022.  (Tr. 21.)  While Plaintiff may disagree with the ALJ's findings in this regard, such disagreement is not a basis for reversal.  As long as there is substantial evidence to support the decision, the Court may not substitute its judgment for that of the Commissioner.  *See Newton*, 209 F.3d  at 452.  Nor is reversal required simply because the ALJ rejects the medical opinions in the record.  To the contrary, the ALJ may properly make a disability determination that does not expressly adopt any medical opinion when it is based on substantial evidence.  *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (finding that, although ALJ did not adopt state agency report or accept testimony of a medical provider, this did not preclude finding that his decision was based on substantial evidence); *cf. Joseph-Jack v. Barnhart*, No. 03-30277, 80 F. App'x 317, 318 (5th Cir. 2003) (rejecting the argument that the ALJ was not competent to assess the RFC because the record did not contain an RFC assessment by a medical source).

Finally, Plaintiff argues that remand is required not only for further explanation, but for further development of the record, either by way of an additional consultative examination, the taking of additional medical expert testimony, or by sending interrogatories to a medical expert. (Docket Entry 10, at 14.)  However, as the Commissioner points out, a court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless petitioner can show prejudice by the ALJ's failure.  (Docket Entry 13, at 14 (citing *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).)   To establish prejudice, Plaintiff must show that she "could and would have adduced evidence that might have altered the result."  *A.G. v. O'Malley*, No. 3:24-CV-266-S-BR, 2024 WL 4137269, at *3 (ND, Tex. Aug. 13, 2024) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).   In a case like this, where the treatment records supported the ALJ's

decision, Plaintiff has not shown that harm resulted from the failure to obtain additional medical opinion evidence; indeed, at the hearing before the ALJ, Plaintiff's representative stated his belief that the consultative examinations already in the record were sufficient in themselves to find that Plaintiff would not be able to work.  (Tr. 36.)  The fact that the ALJ ultimately disagreed with this assessment is not grounds for requiring further medical opinions in this regard.

## V.      Conclusion and Recommendation.

Based on the foregoing, I recommend that the Commissioner's decision denying Plaintiff's application for DIB and SSI be **AFFIRMED.**

## VI.     Instruction for Service and Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user," or (2) by mailing a copy to those not so registered by certified mail, return receipt requested. The parties must file written objections, if any, to this Report and Recommendation **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which their objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered."  *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo*

review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    **SIGNED** on July 14, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge